IN RE APPLICATION OF DICKENS.

[Cite as *In re Application of Dickens,*
106 Ohio St.3d 128, 2005-Ohio-4097.]

(No. 2005–0229—Submitted March 30, 2005—Decided August 24, 2005.)

PER CURIAM.

{¶ 1} Applicant, Angelo Dickens, of New York, New York, graduated from Cleveland–Marshall College of Law in May 1995. He applied to take the Ohio bar examination in July 1995, February 1996, and July 1996. His character and fitness were approved each time, and he sat for all three examinations.

{¶ 2} Applicant then applied to take the July 2001 Ohio bar examination. The Joint Committee on Bar Admissions of the Cleveland and Cuyahoga County Bar Associations recommended that the application be denied, and as a result, applicant did not sit for the bar examination that year.

{¶ 3} Applicant appealed, and a three-member panel of the Board of Commissioners on Character and Fitness held hearings in July 2002 and December 2003. Applicant testified at the first hearing but did not appear at the second hearing; one hour before the second hearing began, applicant called to request a continuance. The panel also considered various documentary exhibits. The record before us discloses the following facts.

{¶ 4} Applicant has a long history of legal troubles. Among his criminal convictions are two disorderly conduct charges, two harassment charges, a menacing charge, and a menacing-by-stalking charge.

{¶ 5} Applicant also has a record of traffic crimes. He was convicted of reckless operation in New Jersey in 2000. Moreover, in his second application to take the bar examination, he reported having received an unspecified number of parking tickets, a speeding ticket, and two other unexplained citations since he had last applied to take the bar exam. And in his third bar-exam application, applicant reported having accumulated 40 outstanding parking tickets over the previous four years as well as another speeding ticket since his last application.

{¶ 6} Two warrants for applicant's arrest were outstanding when the panel issued its report in July 2004. One warrant resulted from applicant's failure to pay a fine imposed with his New Jersey reckless-operation conviction; the other was issued by Pennsylvania authorities after applicant was convicted of harassment and did not pay the fine and court costs.

{¶ 7} Applicant has been involved in civil proceedings as well. In his fourth bar-exam application, he reported that he had been evicted from rental properties by court orders in 1997, 1998, 1999, and 2000.

{¶ 8} The panel also examined applicant's financial records and employment history. On his fourth bar-exam application, applicant disclosed that six of his credit cards had been revoked for his default. At the second panel hearing, the evidence showed that applicant owed past-due debts to Visa and the United States Department of Education and had been in default on a student loan since 1980. The balance on that loan was over $9,000 in March 2003. Applicant also acknowledged on his fourth bar-exam application that he had been fired from jobs twice in 2000.

{¶ 9} Applicant made several comments in his applications and testimony that the panel found troubling. First, describing one of his convictions in his 2001 application, applicant insisted that he had been wrongly accused, a witness had lied at his trial, and he had been wrongly convicted. Applicant also claimed that his landlords had evicted him in illegal retaliation.

{¶ 10} Testifying before the panel, applicant reported that he had been "verbally and psychologically abused" by the Joint Committee on Admissions of the Cleveland and Cuyahoga County Bar Associations. He claimed, "Many powerful people, wealthy people along with [a] large group of rouge [sic, rogue] cops from several Northeast Ohio jurisdictions have conspired against me to destroy me and keep me down in poverty and unemployed for the rest of my life." He also said, "People by the thousands * * * threaten me daily every time I walk down the street * * *. * * * People even try to run me down at high rates of speed when I am in a crosswalk, including on-duty Cleveland cops." The panel was understandably disturbed by these statements and others of their sort and found them to be "totally unbelievable and unrealistic."

{¶ 11} In weighing the evidence, the panel considered the factors listed in Gov.Bar R. I(11)(D) and concluded that applicant had demonstrated a pattern of disregard for the laws of this and other states, had neglected his financial responsibilities, and had violated court orders. Gov.Bar R. I(11)(D)(3)(f), (k), and (m). Citing what it described as applicant's bizarre and incoherent testimony, the panel also expressed the view that applicant may be suffering from a mental or psychological disorder that, left untreated, could affect his ability to practice law in a competent and professional manner. Gov.Bar R. I(11)(D)(3)(e).

{¶ 12} The panel concluded that applicant had not established his character and fitness for admission to the Ohio bar by clear and convincing evidence.

{¶ 13} The board adopted the panel's findings of fact and recommended that applicant's pending application to take the Ohio bar examination be disapproved. The board further recommended, consistent with the panel's report, that applicant be permitted to reapply no sooner than for the July 2008 exam and that to apply for that exam, applicant be required to file a new application to register as a bar candidate and to undergo another complete character and fitness evalua-

tion. The board also recommended that applicant be required to submit with his new application a psychiatrist's assessment of applicant's fitness to practice law.

{¶ 14} We adopt the findings, conclusions, and recommendation of the board. Under Gov.Bar R. I(11)(D)(1), "[t]he applicant has the burden to prove by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." The evidence amply shows that applicant did not meet that burden.

{¶ 15} First, applicant's history of violating criminal and traffic laws and his repeated civil legal troubles with his landlords call into question his fitness to practice law. Any outstanding arrest warrants must be resolved before he can sit for the bar examination for the fourth time. "Evidence of a pattern of disregard of the laws of Ohio or of other states" calls into question an applicant's claim that his or her prior conduct justifies the trust of clients, adversaries, courts, and others. *In re Application of VanDenBossche* (2000), 88 Ohio St.3d 158, 160–161, 724 N.E.2d 405. See, also, *In re Application of Kapel* (1995), 72 Ohio St.3d 532, 651 N.E.2d 955 (applicant's disorderly conduct conviction and repeated traffic violations, including speeding, demonstrated that the applicant lacked the requisite character and fitness for the practice of law).

{¶ 16} Second, financial responsibility is critically important for lawyers. The reservations expressed by the panel members relating to applicant's financial condition were justified, and neglect of financial responsibilities weighs against approval of an application for admission. "We expect applicants for admission to the Ohio bar and bar members to scrupulously honor all financial commitments." *In re Application of Manayan,* 102 Ohio St.3d 109, 2004-Ohio-1804, 807 N.E.2d 313, ¶ 14. See, also, *In re Application of Mitchell* (1997), 79 Ohio St.3d 153, 679 N.E.2d 1127 (disapproving the application of an applicant who, along with other problems, had had several credit cards canceled for nonpayment).

{¶ 17} Finally, applicant's testimony suggesting that witnesses, law enforcement officers, and others are conspiring to frustrate his professional goals and endanger his safety are troublesome. These remarks do not convey an attitude of respect toward our system of justice, and they reflect an unhealthy tendency on applicant's part to blame anyone but himself for any setbacks or challenges in his personal and professional life. At a minimum, applicant's written and oral testimony raises serious doubts about his present fitness to practice law.

{¶ 18} For these reasons, we disapprove applicant's application to take the Ohio bar examination. He may, however, apply to sit for the examination in July 2008 or later by filing an entirely new application to register as a candidate, a new application to take the bar examination, and a report from a psychiatrist regarding his fitness to practice law. Upon application, he must undergo a complete character and fitness investigation, including the preparation of a report

by the National Conference of Bar Examiners, to allow the board to determine whether he possesses the necessary qualifications for admission to the practice of law in Ohio.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Angelo Dickens, pro se.

Anthony J. Amato, for the Joint Committee on Admissions of the Cleveland and Cuyahoga County Bar Associations.