IN RE APPLICATION OF CORRIGAN.

[Cite as *In re Application of Corrigan,* 123 Ohio St.3d 173, 2009-Ohio-4183.]

*Attorneys — Character and fitness — Employment instability, criminal history, alcohol abuse, and acts involving dishonesty or deceit — Application disapproved, with permission to reapply on conditions.*

(No. 2009-0510 — Submitted May 19, 2009 — Decided August 26, 2009.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 393.

_____

**Per Curiam.**

{¶ 1} John Francis Corrigan of Eastlake, Ohio, has applied to register as a candidate for admission to the Ohio bar and to take the Ohio bar examination. The Board of Commissioners on Character and Fitness recommends that at this time, we disapprove his character, fitness, and moral qualifications, citing his lack of maturity, employment instability, criminal history, his ambivalence toward alcohol rehabilitation, and acts involving dishonesty or deceit. The board further recommends that we permit him to reapply for a future bar exam after he provides the board with (1) a psychiatric evaluation from a psychiatrist or psychologist licensed in the state of Ohio and approved by the board and (2) an assessment from an alcohol counselor certified in the state of Ohio. For the reasons that follow, we accept the board's recommendations.

**Summary of Proceedings**

{¶ 2} The applicant graduated from Cleveland-Marshall College of Law in May 2007. He registered as a candidate for admission to the Ohio bar in June 2007 and subsequently applied to take the February 2008 bar examination.

**{¶ 3}** Members of the Joint Admissions Committee of the Cleveland and Cuyahoga County Bar Associations interviewed him pursuant to Gov.Bar R. I(11)(C)(3), but disapproved of his character, fitness, and moral qualifications for the practice of law. At the applicant's request, the Cleveland Metropolitan Bar Association's Admissions Appeals Committee conducted a hearing on that disapproval, but voted unanimously to deny his appeal.

**{¶ 4}** Pursuant to Gov.Bar R. I(11)(D)(5)(a), which requires review by the board when an applicant has been convicted of a felony, and on the applicant's notice of appeal (see Gov.Bar R. I(12)(C)), a three-member panel of the Board of Commissioners on Character and Fitness conducted a hearing in January 2009. After hearing the testimony of applicant and his girlfriend, the panel recommended that the board disapprove the application. The full board accepted the panel's recommendation and disapproved the application on February 6, 2009.

**{¶ 5}** The panel and board identified three areas of concern that justified disqualification: (1) the applicant's employment instability, including his departure from the Medina County Public Defender's Office, (2) his criminal history, and (3) his ambivalence toward alcohol rehabilitation.

*Employment*

**{¶ 6}** The panel and board determined that the applicant, who is now 32 years old, held in excess of 17 jobs between the ages of 20 and 30. Many of those were food-service positions that lasted only a few months. The applicant stated that he left a number of jobs because he did not like the work or the job just "did not work out." His longest terms of steady employment were his part-time jobs as a library assistant at the Cleveland State University library from January 2003 to May 2007 and as a law clerk with O'Shea & Associates from June 2006 to March 2008. The panel and board noted that the applicant's employment history demonstrated a lack of maturity.

**{¶ 7}** Both the panel and the board expressed concern regarding the applicant's "vague departure" from a job he held at the Medina County Public Defender's Office for a six-week period in July and August 2005. It appears that his termination arose from allegations that he had falsified a timecard. However, the applicant attempted to attribute his departure to his hour-long commute, the imminent start of school, and the fact that the job "just never really worked out," and noted that he and the public defender reached a "mutual agreement" to terminate his employment. He further suggested that the timecard allegation was a mere pretext for terminating him, when the real reason was his criminal convictions. A representative from the public defender's office confirmed the mutuality of the termination and added that the applicant would not be rehired.

### Criminal Record

**{¶ 8}** The panel and the board also expressed concern about the applicant's criminal history. While noting multiple arrests between 1996 and 2001 for minor incidents involving alcohol abuse, the panel and board focused upon two more serious incidents that occurred in 1996 and 1997.

**{¶ 9}** In December 1996, the applicant was arrested for an open-container violation and subsequently charged with disorderly conduct after he physically and verbally abused the arresting officers. Then, in May 1997, the applicant was arrested for DUI, fleeing the scene of an accident, and failing to maintain the assured clear distance after he struck a vehicle from behind and attempted to leave the scene. During that arrest, he assaulted two police officers, which resulted in additional charges of felonious assault and assault on a peace officer. The applicant pleaded guilty to DUI, felonious assault, and two counts of assault on a peace officer and received an aggregate three-year prison sentence. Subsequently the court modified his sentence to five years of community control, which he completed in March 2001. His insurance company also settled a tort action arising out of his drunk driving for $35,000 in 1999.

*Alcohol Rehabilitation*

**{¶ 10}** As the panel and board noted, the applicant stated that he had attended approximately 500 Alcoholics Anonymous meetings while serving his community control, although he admitted to drinking occasionally and moderately at the time of his hearing. In his brief, he expressed his objections to the Ohio Lawyers Assistance Program ("OLAP") and 12-step programs, criticizing their spiritual base and their focus on alcoholism as a disease, expressing his view of alcoholism as a behavior problem. During the pendency of his application, he initiated a meeting with Paul Caimi at OLAP, but decided that the program was not appropriate for him. In hindsight, he indicated that he regretted the meeting because he believed that it cast additional scrutiny on his past behavior, which he contends is no longer an issue for him. Although he attended three counseling sessions at Cleveland State in 2005, he was terminated from the program after he missed a session and failed to respond to the counseling center's inquiries. The counselor's termination summary stated: "Clnt [sic] was able to examine the root of his negative thinking, but still had probs [sic] staying grounded in the present."

*Disposition*

**{¶ 11}** An applicant for admission to the Ohio bar has the burden to prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). To be approved, the applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). Gov.Bar R. I(11)(D)(3) and (4) provide nonexhaustive lists of factors that the admissions committee and the board must consider before making a recommendation about an applicant's character, fitness, and moral qualifications.

**{¶ 12}** Having considered those factors, the panel and the board cited "[t]he Applicant's pattern of traffic violations and criminal conduct, the evidence

of a prior alcohol dependency and an ambivalence toward rehabilitation, evidence of a possible mental or psychological disorder that inhibited his ability to hold employment for a period of time, and acts involving dishonesty or deceit, particularly with regard to his employment at the Medina County Public Defender's Office," and his evasive answers to questions at the hearing, to support the conclusion that the applicant failed to meet his burden. The record supports this conclusion.

{¶ 13} "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Gov.Bar R. I(11)(D)(3). Here, the record demonstrates that the applicant gave evasive answers to questions at the hearing and that his termination from the Medina County Public Defender's Office was likely related to allegations that he falsified his timecard.

{¶ 14} Additionally, "[e]vidence of mental or psychological disorder that in any way affects or, if untreated, could affect the applicant's ability to practice law in a competent and professional manner" weighs against admission to the practice of law in Ohio. Gov.Bar R. I(11)(D)(3)(e). See also *In re Application of Dickens*, 106 Ohio St.3d 128, 2005-Ohio-4097, 832 N.E.2d 725 (disapproving the application of an applicant who, among other problems, gave bizarre and incoherent testimony that the panel believed could be evidence of an untreated mental or psychological condition). Here the panel and board found that the applicant's inability to hold employment for a period of time was evidence of a possible mental or psychological disorder that could impair the applicant's ability to practice law.

{¶ 15} Additionally, the applicant's pattern of disregard for the laws of this state and his dishonesty or deceit with respect to his termination from the Medina County Public Defender's Office call into question his claims that his record justifies the trust of clients, adversaries, courts, and others. Gov.Bar R.

I(11)(D)(3)(f) and (i); *Dickens* at ¶ 15, citing *In re Application of VanDenBossche* (2000), 88 Ohio St.3d 158, 160-161, 724 N.E.2d 405 (applicant's criminal record and inability to explain recent charges reflected lack of present fitness to practice law); and *In re Application of Kapel* (1995), 72 Ohio St.3d 532, 651 N.E.2d 955 (applicant's disorderly-conduct conviction and repeated traffic violations, including speeding, demonstrated that the applicant lacked the requisite character and fitness for the practice of law).

{¶ 16} Also, "[e]vidence of an existing and untreated chemical (drug or alcohol) dependency" is another factor weighing against admission to the practice of law in Ohio. Gov.Bar R. I(11)(D)(3)(b). Here, there is no finding by the board that the applicant is currently dependent on alcohol. However, the board found that his past dependence, his admission that he continues to drink occasionally, and his ambivalence toward or resistance to rehabilitation warrant further consideration of whether the applicant has an existing and untreated alcohol dependence that could affect his ability to practice law.

{¶ 17} On review, we adopt the board's findings as to the applicant's character and fitness and its recommendation to disapprove his pending application to take the February 2008 bar examination. He may reapply in accordance with Gov.Bar R. I(3) to take a future bar examination. However, in reapplying, the applicant must first submit to the board a psychiatric evaluation from a psychiatrist or psychologist approved by the board and licensed in the state of Ohio, as well as an assessment from an alcohol counselor certified in the state of Ohio, and demonstrate by clear and convincing evidence that he possesses the requisite character, fitness, and moral qualifications for admission to the practice of law.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

John F. Corrigan, pro se.

George W. MacDonald, for the Cleveland Metropolitan Bar Association.

_____